UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **DESHAN SPIVEY** | : | **DOCKET NO. 2:23-cv-0647** |
| D.O.C. # 502345 | | **SECTION P** |
| **VERSUS** | : | **JUDGE JAMES D. CAIN, JR.** |
| **KEITH COOLEY, ET AL.** | : | **MAGISTRATE JUDGE KAY** |

**REPORT AND RECOMMENDATION**

Before the court are the original and amended civil rights complaints (docs. 1, 9, 10) filed pursuant to 42 U.S.C. § 1983, by Deshan Spivey, who is proceeding pro se and *in forma pauperis* in this matter. Spivey is an inmate in the custody of the Louisiana Department of Corrections ("LDOC"), incarcerated at the Allen Correctional Center (ACC) in Kinder, Louisiana. He names the following as defendants: (1) Keith Cooely; (2) Brent Thompson; (3) James Leblanc; (4) Curley Victorian; (5) Mark Estes; (6) Col. Langley; (7) D. Johnson; (8) Krystal Simon; (9) Cpt Dauzat; and (10) Major Smith. This matter has been referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of this court.

**I.**
**BACKGROUND**

In his original complaint, plaintiff alleges that he has been retaliated against as a result of PREA complaints he has made while housed at ACC. Doc. 1, p. 3. He makes a general statement that his "constitutional rights have been violated 8th amendment cruel and unusual punishment and 1st amendment the right to liberty and the pursuit of happiness." *Id*. He also states that "no one

should be mistreated because they are LBGQT or denied the same rights that other prisoners are given." *Id.*

On June 26, 2023, the Court ordered plaintiff to amend his complaint to provide specific facts to support the conclusion that his constitutional rights were violated and to cure other deficiencies. Doc. 8. On July 7, 2023, plaintiff filed his first amended complaint. Doc. 9. Therein he states that on August 20, 2022, he was attacked by an inmate because he refused to engage in sexual acts with him. He asserts that, when he told the guard on duty, Lt. Corey, he was taken to lockdown. The incident was turned over to the lead investigator, Col. Langley, who failed to protect plaintiff from the inmate.

Plaintiff further alleges that, on December 21, 2022, the same inmate walked past several guards and into plaintiff's unit and pulled a knife on him, threatening, "I was going to be his or he would kill me." Doc. 9, p. 3. Plaintiff reported the incident to Col. Langley and Dylan Johnson, who performed an investigation. The inmate was cleared and continued to harass plaintiff. Plaintiff asked to be placed in protective custody but was continuously denied. He alleges that when he asked Assistant Warden Curley Victorian to place him in protective custody, Victorian called him derogatory names and wrote him up for a false rule violation. The inmate at issue was transferred out of ACC in April 2023, after physically, verbally, and emotionally abusing plaintiff causing him to suffer from suicidal thoughts, depression, and a thirty-five-pound weight gain.

On July 17, 2023, plaintiff filed a second amended complaint, expounding on some of the claims made in his first two complaints as well as adding new claims. First, he clarifies that his claims against Warden Cooley are based on the fact that the warden is responsible for his staff. He also raises a new claim regarding an incident that occurred on January 26, 2023. Plaintiff now claims that, on that date, he asked Assistant Warden Victorian to place him in protective custody,

as he and the inmate at issue were housed in the same unit. He alleges that, in response, Victorian called him several derogatory names and sent him back to his unit. He later wrote him up on a rule violation, pursuant to which he was found guilty and, as a result, lost 15 days of good time credit. Plaintiff appealed the decision, which was ultimately vacated on procedural grounds. He asks the Court to restore his good time credits.

Plaintiff further complains about the conditions of his confinement. Specifically, the fact that he is unable to get assistance from inmate lawyers while housed in the cell blocks, that his cell has sewerage back-up in the sink, mold, mildew and rust. Finally, he complains that prison officials have opened his legal mail.

## II.
## LAW & ANALYSIS

### A. *Frivolity Review*

Spivey has been granted leave to proceed in forma pauperis in this matter. Accordingly, his complaint is subject to screening under 28 U.S.C. § 1915(e)(2), which provides for *sua sponte* dismissal of the complaint or any portion thereof if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)–(iii).

A complaint is frivolous if it lacks an arguable basis in law or fact. *Gonzalez v. Wyatt*, 157 F.3d 1016, 1019 (5th Cir. 1998). A complaint fails to state a claim upon which relief may be granted if it is clear the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). When determining whether a complaint is frivolous or fails to state a claim upon which relief may be granted, the court must accept plaintiff's allegations as true. *Horton v. Cockrell*, 70 F.3d 397, 400 (5th Cir. 1995) (frivolity); *Bradley v. Puckett*, 157 F.3d at 1025 (failure to state a claim).

**B. Section 1983**

Federal law provides a cause of action against any person who, under the color of state law, acts to deprive another of any right, privilege, or immunity secured by the Constitution and laws of the United States. 42 U.S.C. § 1983. In order to hold the defendant liable, a plaintiff must allege facts to show (1) that a constitutional right has been violated and (2) that the conduct complained of was committed by a person acting under color of federal law; that is, that the defendant was a government actor. *See West v. Atkins*, 108 S. Ct. 2250, 2254–55 (1988).

**C. Claims**

    *a. Failure to Protect*

The plaintiff asserts that the defendants failed to protect him from physical, emotional and verbal abuse. With respect to the first attack which allegedly occurred on August 20, 2022, plaintiff makes no allegation that he made any complaints to any prion officials prior to the incident taking place. Moreover, he does not allege any specific physical injury that occurred as a result of the alleged attack. Furthermore, with respect to any other complaints made to guards subsequent to the August 2022 alleged physical altercation, plaintiff only asserts that the inmate at issue continued to harass him, verbally abusing him.

Under the Eighth Amendment to the United States Constitution, a prisoner has a constitutional right to be sheltered from threats of harm or violence at the hands of other inmates. *Johnston v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986); *Jones v. Diamond*, 636 F.2d 1364, 1373 (5th Cir. 1981). Specifically, prison officials "have a duty ... to protect prisoners from violence at the hands of other inmates." *Farmer v. Brennan*, 114 S. Ct. 1970, 1977 (1994). However, in order for there to be liability in connection with this cause of action, there must have existed an intent on the part of security officers to cause the plaintiff harm or at least a conscious or callous

indifference to the plaintiff's right to be protected from such harm. *Johnston v. Lucas*, supra, 786 F.2d at 1259. "Deliberate indifference" is the appropriate standard to be applied in this context, and this term has been defined as including an element of "subjective recklessness" as used in the criminal law. *Farmer v. Brennan*, supra, 114 S.Ct. at 1979 (noting that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"). The deliberate indifference standard sets a very high bar, and a claim of mere negligence in failing to protect an inmate from harm is not actionable under § 1983. *See Davidson v. Cannon*, 106 S. Ct. 668, 682 (1986).

In the instant case, applying the foregoing standard, the Court finds that the plaintiff's claim fails as a matter of law because the plaintiff has failed to allege that the defendants knew of any risk of serious harm to him prior to the August 2022 incident or that he sustained any harm or injury as a result of the defendants' actions. Numerous cases have addressed this issue in this context and have concluded that the dismissal of an inmate's failure-to-protect claim is warranted, even as frivolous, when no harm or injury has been suffered as a result of the defendants' conduct. *See Walzier v. McMullen*, 333 Fed. Appx. 848, 851 (5th Cir. 2009) (upholding summary judgment in favor of the defendants where there was no proof of any harm and, "[a]bsent a showing that other inmates harmed [the plaintiff], there is no factual basis for a failure to protect claim"); *Castellano v. Treon*, 79 Fed. Appx. 6, 7 (5th Cir. 2003) (upholding the dismissal of an inmate's failure-to-protect claim as frivolous where the plaintiff conceded that "he suffered no actual physical injury resulting from the prison officials' purported failure to protect"); *Wilson v. King,* 2015 U.S. Dist. LEXIS 39484, 2015 WL 1427479, *6 (S.D. Miss. Mar. 27, 2015) (dismissal as frivolous where the inmate plaintiff "admit[ted] that he suffered no physical injury"); *Lilly v. Webb,* 2008 U.S. Dist. LEXIS 104535, 2008 WL 5412374, *4 (E.D. Tex. Dec. 29, 2008) (dismissal after

an evidentiary hearing where the inmate plaintiff did not "indicate that he suffered any harm"); *White v. Fox,* 2005 U.S. Dist. LEXIS 49661, 2005 WL 2218142, *6 (E.D. Tex. Sept. 12, 2005) (dismissal after a preliminary evidentiary hearing where the inmate plaintiff "conceded that no harm came to him as a result [of being labeled a snitch]"), reversed on other grounds, 294 Fed. Appx. 955 (5th Cir. 2008). Accordingly, plaintiff's failure to protect claim should be dismissed.

### b. Retaliation

"Retaliation" is not expressly referenced in the Constitution; however, it is nonetheless actionable because retaliatory actions may tend to chill an individual's exercise of constitutional rights. *See Perry v. Sindermann*, 92 S. Ct. 2694, 2698 (1972). Retaliation is actionable only if the retaliatory act "'is capable of deterring a person of ordinary firmness from further exercising his constitutional rights.'" *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008) (quoting *Morris v. Powell,* 449 F.3d 682, 686 (5th Cir. 2006)).

The purpose of allowing retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights. *Morris*, 449 F.3d at 686. Thus, "[a] prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct." *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995) (citations omitted). "Filing grievances and otherwise complaining about the conduct of correctional officers through proper channels are constitutionally protected activities, and prison officials may not retaliate against inmates for engaging in such protected activities." *Reese v. Skinner*, 322 F. App'x 381, 383 (5th Cir. 2009) (per curiam) (citing Morris, 449 F.3d at 684).

The Fifth Circuit has emphasized that "prisoners' claims of retaliation are regarded with skepticism and are carefully scrutinized by the courts." *Adeleke v. Fleckenstein,* 385 F. App'x 386,

387 (5th Cir. 2010) (per curiam) (citing *Woods*, 60 F.3d at 1166). In addition, the Fifth Circuit has concluded that some acts, even though they may be motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights. *Morris*, 449 F.3d at 686. Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim. *Id*.

To state a valid § 1983 claim for retaliation, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Jones*, 188 F.3d at 324-25 (citing *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998)). An inmate must allege more than his personal belief that he is the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997), cert denied, 522 U.S. 995, 118 S. Ct. 559, 139 L. Ed. 2d 400 (1997) (citations omitted). "Mere conclusionary allegations of retaliation will not be enough to withstand a proper motion for dismissal of the claim." *Jones*, 188 F.3d at 325 (citing *Woods*, 60 F.3d at 1166). The inmate must produce direct evidence of motivation or a chronology of events from which retaliation may be inferred. *Id*. In other words, a successful claim of retaliation requires a showing that, but for some retaliatory motive, the complained of adverse incident would not have occurred. *Woods*, 60 F.3d at 1166.

Here, plaintiff appears to make two separate claims of retaliation. First, he alleges that he was retaliated against "as a result of the PREA complaints (doc. 1, p. 3), which led to guards calling him derogatory names and writing him up for a "fake rule violation," which was later vacated (doc. 9, p. 3). Further, he appears to claim that as a result of filing the instant lawsuit, he was sentenced to cell block time in order to deter him from exercising his constitutional right to access the courts.

Doc. 10, p. 4. He explains that the "cell block method" is used to "deter, delay, impede or altogether discourage one from going to the courts." *Id*. at p. 5.

Plaintiff has met the first prong of a retaliation claim because he alleges that he was exercising his constitutional rights to file a grievance and access the courts by filing a lawsuit. Next, satisfying the second prong, plaintiff alleges that Cooley, Thompson and Victorian called him derogatory names, wrote him up and made housing decisions to retaliate against him filing grievances and the instant civil rights lawsuit.

Although plaintiff has not alleged any facts showing direct evidence of motive, he does allege that the retaliatory actions took place on the same day that grievances were filed and the same day he "sent the paper to verify my funds to inmate banking to send to the courts of file" the instant suit. Doc. 10, p. 4. However, even if the Court were to find this sufficient to allege a chronology of events from which a retaliatory motive may plausibly be inferred, plaintiff's claim still fails.

As stated above, to satisfy the *de minimis* test for purposes of the third prong, a prisoner must allege adverse facts that rise "to the level of that which would deter the exercise of a constitutional right." *Morris*, 449 F.3d at 686. Here, plaintiff's placement in the cell block did not deter him from accessing the court; in fact, his second amended complaint was filed while he was in Mars cell block. *See* doc. 10, p. 5. Because plaintiff was not deterred "from further exercising his constitutional rights[,]" he does not satisfy the *de minimis* test. See *Smith*, 533 F. App'x at 482; *cf. Ibenyenwa v. Wells,* 2022 U.S. App. LEXIS 3663, 2022 WL 413941, at *1 (5th Cir. Feb. 10, 2022) (affirming the district court's determination that the plaintiff failed to state a claim for retaliation because "[d]espite the defendants' actions, [the plaintiff's] filing of grievances and abusive complaints continued unabated, even during the instant litigation. Any assertion that the

defendants 'chilled' [the plaintiff] from exercising a constitutional right is belied by [the plaintiff's] own actions.").

Moreover, verbal assaults do not rise to the level of constitutional violations. *See Robertson v. Plano City*, 70 F.3d 21, 24 (5th Cir. 1995). Thus, plaintiff's retaliation claim should be dismissed.

### c. *Discrimination*

Plaintiff claims that he is the victim of discrimination based upon sexual orientation and implies that because he is a homosexual, he is treated differently than other prisoners who are heterosexual. To succeed on an equal protection claim, the plaintiff must allege that he was intentionally treated differently from "similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Taylor v. Johnson,* 257 F.3d 470, 472 (5th Cir. 2001). "Discriminatory purpose ... implies that the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group." *Lavernia v. Lynaugh*, 845 F.2d 493, 496 (5th Cir. 1988) (internal quotation marks omitted). Put another way, in order to state a claim for violation of equal protection of the laws, a plaintiff must show that the defendant acted with an intent or purpose to discriminate against him based upon his membership in a protected class. *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001). "Intentional discrimination means that a defendant acted at least in part because of a plaintiff's protected status." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003).

The alleged discrimination in this case is based on sexual orientation. Neither the Supreme Court nor the Fifth Circuit "has recognized sexual orientation as a suspect classification" or protected group; nevertheless, governmental action may violate the equal protection rights of a

homosexual person "if it disadvantages homosexuals for reasons lacking any rational relationship to legitimate governmental aims." *Johnson v. Johnson*, 385 F.3d 503, 532 (5th Cir. 2004); accord *Whiting v. Univ. of S. Miss.*, 451 F.3d 339, 348 (5th Cir. 2006)(quoting *Vill. of Willowbrook v. Olech,* 120 S.Ct. 1073, 1074 (2000) and recognizing that absent membership in a suspect or protected class, a plaintiff can succeed on a "class of one" equal protection claim only when there is "no rational basis for the difference in treatment").

Legitimate governmental aims include "preservation of order and prevention of violence in prison" and protection of "homosexual prisoners from abuse at the hands of their fellow inmates". *See Hall v. Morehouse Parish Det. Ctr.*, No. 09-1476, 2009 U.S. Dist. LEXIS 104870, 2009 WL 3762084, at *1, 4 (W.D. La. Nov. 9, 2009) (adopting recommendation with one modification).

Plaintiff has failed to show how any defendant intentionally treated him differently from similarly-situated inmates due to his sexual orientation. Any claim that he was "discriminated" against because of derogatory remarks regarding his homosexuality should fail, as stated above, verbal insults simply do not amount to a constitutional violation. *See, e.g., Robertson v. Plano City,* 70 F.3d 21, 24 (5th Cir. 1995).

### d. Conditions of Confinement

Plaintiff also complains that there is sewage back-up in the sink, mold, mildew and rust in the cell block.  Plaintiff does not allege any harm that he has suffered from the presence of these substances. The mere fact that there is mold, mildew, or fungus does not warrant relief. *Carter v. Strain*, C.A. No. 09B15, 2009 U.S. Dist. LEXIS 91301, 2009 WL 3231826 at *3 (E.D. La. Oct. 1, 2009); *McCarty v. McGee,* No. 2:06cv113, 2008 U.S. Dist. LEXIS 9242, 2008 WL 341643 at *3 (S.D. Miss. Feb. 5, 2008) ("Plaintiff's claim that the shower he was forced to share with other

inmates is polluted and covered in mold and fungus, causing him to catch athlete's foot and ringworm, fails to rise to the level of a constitutional violation.").

Courts who have examined claims for mold in prison settings and complaints of generalized physical maladies, such as exacerbation of asthma and allergy symptoms, have found these and similar maladies insufficient to support an Eighth Amendment conditions of confinement claim for purposes of 42 U.S.C. § 1997e(e). *Walston v. State Counsel for Offenders*, No. H-0-2120, 2010 U.S. Dist. LEXIS 77151, 2010 WL 3056657 *5-6 (S.D. Tex. Jul. 30, 2010); *see Mayes v. Travis State Jail,* No. 06BCAB709, 2007 U.S. Dist. LEXIS 47317, 2007 WL 1888828 (W.D. Tex. June 29, 2007) (finding as de minimis inmate's claims for recurrent sinus infections allegedly due to mold and mildew exposure); *Smith v. Fox*, No. 4:05BCVB1554, 2006 U.S. Dist. LEXIS 51554, 2006 WL 2090170 *6 (D.S.C. 2006) (finding as *de minimis* inmate's claims of migraines and sores in his nose and mouth due to mold and mildew in his cell); *Gill v. Shoemate*, No. 05BCVB2124, 2006 U.S. Dist. LEXIS 29297, 2006 WL 1285412 at *5 (W.D. La. May 8, 2006) (finding as *de minimis* complaints of headaches and eye and throat irritation following exposure to mold, mildew, dust, and fumes); *Vega v. Hill,* No. 3B05BCVB1577, 2005 U.S. Dist. LEXIS 46530, 2005 WL 3147862 (N.D. Tex. Oct. 14, 2005) (finding that conclusory allegations of "bad headaches, sleeplessness," and "dizziness" due to exposure was insufficient to establish a physical injury that was more than *de minimis*).

Moreover, his allegations of sewage backup also fails to show that he was confined under such extreme conditions as to violate the Eighth Amendment. *See Gates v. Cook*, 376 F.3d 323, 334 (5th Cir. 2004) (inmates held in cells "that were extremely filthy with chipped, peeling paint, dried fecal matter and food encrusted on the walls, ceilings, and bars, as well as water from flooded toilets and rain leaks"); *McCord v. Maggio*, 927 F.2d 844, 846 (5th Cir. 1991) (inmate's cell had

sewage water and human waste back up into it, and because there was no bunk, inmate had to sleep on mattress placed on the floor). In the absence of any showing that the conditions of confinement amounted to an "extreme deprivation," regardless of whether any harm had yet been suffered, plaintiff's complaint are without merit. *See Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996) (no constitutional violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell)); *Davis v. St. Charles Parish Corr. Ctr.*, No. 10B98, 2010 U.S. Dist. LEXIS 20642, 2010 WL 890980, at *9 (E.D. La. Mar. 8, 2010) (Lemmon, J.) (citing *Talib v. Gilley*, 138 F .3d 211, 215 (5th Cir. 1998)); *Wilson*, 878 F.2d at 849 & n.5 (finding that inmate who complained of "unsanitary practice[s]," including inadequate ventilation, unsanitary water fountains, 52 inmates using one ice cooler, rest room four feet from the dining area, toilets leaking water, and un-sanitized living quarters, failed to state a claim. "Simply because [plaintiff's] dorm is less sanitary than he would like does not render the conditions unconstitutional.")).

### e. *Legal Mail Opened*

Despite his complaints, plaintiff does not have a constitutional right to be present when his legal mail is opened. The Fifth Circuit has held that prisoners do not have a constitutional right to be present when privileged, legal mail is opened and inspected. *Collins v. Foster*, 603 F. App'x 273, 275 (5th Cir. 2015), *citing Brewer v. Wilkinson*, 3 F.3d 816, 825 (5th Cir. 1993); *Patel v. Haro*, 470 F. App'x 240, 244 (5th Cir. 2012).

### f. *Confinement in Segregation/Cellblock*

To the extent that Plaintiff complains about his confinement in disciplinary segregation and the unavailability of inmate legal counsel while housed in cell block, his claim is frivolous. "[T]he Due Process Clause does not protect every change in the conditions of confinement which has a substantial adverse effect upon a prisoner." *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir.

1997) (citing *Sandin v. Conner*, 115 S. Ct. 2293, 2297 (1995)). In *Sandin*, the Court found that an inmate did not have a liberty interest protecting him from a thirty-day assignment to segregated confinement because it was not a dramatic departure from the basic conditions of the inmate's confinement. *Sandin* at 2301. In light of Sandin, the Fifth Circuit has held that, absent extraordinary circumstances, placement in administrative segregation will never be a ground for a constitutional claim. *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998).

Additionally, under the guidance of *Sandin*, the Fifth Circuit has held that as a general rule, only sanctions which result in loss of good time credits or which otherwise directly and adversely affect the date of release will implicate a constitutionally protected liberty interest. *Orellana v. Kyle,* 65 F.3d 29, 31-32 (5th Cir. 1995). Plaintiff has not shown that his confinement in the special housing unit, or any other condition of confinement, was an atypical and significant hardship in relation to ordinary prison life.

### g. *Loss of Good Time Credits*

To the extent that plaintiff seeks restoration of good time that was lost as a result of a disciplinary hearing, such a claim is not properly brought in a civil rights suit.

"A prisoner cannot, in a § 1983 action, challenge the fact or duration of his confinement or recover good-time credits lost in a prison disciplinary proceeding." *Clarke v. Stalder*, 154 F.3d 186, 189 (5th Cir. 1998) (*citing Preiser v. Rodriguez*, 93 S. Ct. 1827, 1835 (1973)). Accordingly, to the extent that plaintiff seeks restoration of the forfeited "good time" credits, he has failed to state a claim for which relief may be granted and his complaint is subject to dismissal on that basis. The restoration of forfeited good time credits must be pursued in a habeas corpus action filed pursuant to 28 U.S.C. § 2241. *Preiser*, 93 S.Ct. 1841. A habeas corpus action must be filed in the

district court where the prisoner is in custody and the proper respondent in such action is the person exercising custody over the prisoner. *See* 28 U.S.C. §§ 2241(d) and 2243.

Further, to the extent that plaintiff seeks monetary damages because of disciplinary hearings that resulted in loss of good time credit, his complaint fares no better. A prisoner cannot bring a § 1983 action seeking damages based upon a prison disciplinary conviction "until that 'conviction' has been reversed on direct appeal, expunged by executive order, or otherwise declared invalid in a state collateral proceeding or by the issuance of a federal writ of habeas corpus, if a favorable judgment in the civil rights action would necessarily imply the invalidity of the disciplinary conviction at issue." *Clarke*, 154 F.3d at 189; *see also Edwards v. Balisok*, 117 S. Ct. 1584 (1997) (citing *Heck v. Humphrey*, 114 S.Ct. 2364 (1994)). Thus, to the extent that plaintiff seeks monetary damages for the loss of his good-time credit, his complaint must be dismissed as frivolous.

## IV.
### CONCLUSION

For reasons stated above, **IT IS RECOMMENDED** that the instant civil rights suit be **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE AND SIGNED in Chambers this 18th day of December, 2023.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE